# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DESHONE LEE SMITH, | ) | 1:09cv0466 DLB |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BACKGROUND

Plaintiff Deshone Lee Smith ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed his application on April 9, 2003, alleging disability since June 1, 1998, due to mild mental retardation, seizures and a lower back injury. AR 69-71, 73-82. After his application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 50-53, 56-59, 60. ALJ Stanley R. Hogg held a hearing

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

on June 13, 2007, and denied benefits on July 2, 2007.  AR 11-25, 411-439.  The Appeals Council denied review on January 14, 2009.  AR 4-6.

Hearing Testimony

ALJ Hogg held a hearing on June 13, 2007, in Sacramento, California.  Plaintiff appeared by telephone and was represented by Geoffrey Hayden.  AR 411.

Plaintiff testified that he has been incarcerated since July 2005 and was currently housed at Mule Creek State Prison.  AR 418, 420.  He testified that he was 30 years old at the time of the hearing and completed the second grade.  AR 417.  Plaintiff has never been able to read or write.  AR 423.

Plaintiff explained that he could not work because of lower back problems and depression.  AR 424.  He rated his back pain at a six and testified that he uses a cane to walk.  AR 428.  He was taking medication for seizures and depression, and to help him sleep.  Dilantin helps control his seizures, though he last had a grand mal seizure three months ago.  AR 424-425.  He testified that he was considered mildly mentally retarded as a child.  AR 425.

Plaintiff also testified that he sometimes has problems with his ankles, shoulders and hands.  He also gets headaches often and takes aspirin.  AR 427.  He thought he could stand for about 30 minutes and could not kneel, stoop or squat to the ground without pain.  AR 429.

Plaintiff did not believe he was getting better and explained that he has lost interest in things and often feels worthless and hopeless.  He has attempted suicide.  AR 429-480.  Plaintiff is also paranoid and has crying spells and hallucinations.  AR 430.  He attends mental health groups in prison.  AR 433.

Medical Record

Plaintiff received treatment between December 2000 and March 2003 while incarcerated through the California Department of Corrections.  AR 114-214.  In February 2002, Plaintiff was restricted from work around moving machinery, heights and other hazards because of his seizure disorder.  He was also restricted to lower bunk/low tier housing.  AR 140.  In August 2002, Plaintiff reported that he was mildly mentally retarded and that he "burnt [his] school at eight years old."  On examination, he was described as charming and friendly with a euthymic mood

and no evidence of mild mental retardation. His memory and attention were within normal limits. AR 126. The evaluator concluded that Plaintiff no longer met the criteria for inclusion in the mental health treatment population. AR 125.

On June 7, 2003, Plaintiff saw Emanuel Dozier, M.D., for a consultive physical examination. He complained of chronic low back pain and a seizure disorder. On examination, Plaintiff walked with no signs of pain and was able to sit during the interview without discomfort. He had normal muscle tone in his back though there was point tenderness in the lumbar back area in the paravertebral muscles. Straight leg raising was positive at 30 degrees and in the sitting position. Plaintiff had pain on range of motion testing of his lumbar back. Motor strength and grip strength were normal. Dr. Dozier diagnosed back pain and a history of a seizure disorder. He opined that Plaintiff would be restricted to occasional bending, stooping or crouching. Plaintiff could not work on scaffolding or around moving machinery. Plaintiff could lift and carry 50 pounds occasionally and 20 pounds frequently and could stand and/or walk for six hours. AR 215-219.

A lumbar spine x-ray taken on June 7, 2003, was normal. AR 220.

On June 17, 2003, Plaintiff saw Shailesh C. Patel for a psychiatric examination. He reported problems with depression and explained that he was abused as a child. Plaintiff also complained of anxiety when he goes to sleep, and reported hearing voices that tell him to hurt other people. During the day, he sometimes sits and talks to himself. He has never worked. AR 221. On mental status examination, Plaintiff's affect was appropriate and he described his mood "confused and depressed." He was alert and oriented to all spheres and his recent and remote memories were fair. Plaintiff was uncooperative during the examination, however.

Dr. Patel diagnosed a history of alcohol abuse, history of ADHD, history of conduct disorder, antisocial personality disorder and rule out mild mental retardation. Dr. Patel found minimal evidence suggesting that Plaintiff had any other psychiatric illness that affected his ability to function, though he needed psychological testing to rule out mild mental retardation and to get more information about his current IQ, which may be affecting his ability to function.

Dr. Patel believed that Plaintiff needed substance abuse treatment and could benefit from vocational training. Plaintiff could not handle his funds. AR 222-223.

On September 12, 2003, Plaintiff saw Kimball Hawkins, Ph.D., for a psychological evaluation. Plaintiff reported physical and sexual abuse as a child and indicated that he spent time in the California Youth Authority. Plaintiff also reported interrupted thought processes, flashbacks and periodic nightmares. On mental status examination, there were no hallucinations though some depressive symptoms were noted. His mood was depressed and his affect was dull. Plaintiff had an "impulsive" performance and had poor mental calculation skills and trouble with multiplication and division. He demonstrated a limited fund of educational knowledge and Dr. Hawkins suspected partial malingering. AR 228-229.

Plaintiff's testing revealed scores in the significant sub-average range of intellectual functioning, though his specific level of functioning was uncertain because of suspected periodic malingering. Plaintiff had symptoms of a personality disorder with antisocial features and reported symptoms typical of post-traumatic stress disorder. Dr. Hawkins believed that Plaintiff needed ongoing psychiatric treatment, medical follow-up, assignment of a payee to manage his finances and perhaps a referral to the Department of Rehabilitation. Dr. Hawkins diagnosed suspected partial malingering, rule out post-traumatic stress disorder, personality disorder with antisocial features, rule out mild mental retardation. AR 231.

He believed that Plaintiff's ability to understand, remember and carry out complex instructions was poor, though his ability to understand, remember and carry out simple instructions was good. Plaintiff's ability to maintain attention, concentration and persistence was fair. Plaintiff's ability to perform activities within a schedule and maintain regular attendance was good. His ability to complete a normal workday and workweek without interruptions from psychologically based symptoms was adequate during the examination, but probably variable. Plaintiff could adequately respond to changes in the work setting. His ability to manage is own money was uncertain. AR 231.

On October 1, 2003, State Agency physician Lavanya Bobba, M.D., completed a Physical Residual Functional Capacity Assessment form. Dr. Bobba opined that Plaintiff could

4

occasionally lift 50 pounds, 25 pound frequently, stand and/or walk about six hours and sit for about six hours. Plaintiff could never climb ladders, ropes or scaffolds and could never balance. He also had to avoid concentrated exposure to hazards. AR 253-260.

On October 20, 2003, State Agency physician Marina C. Vea, M.D., completed a Mental Residual Functional Capacity Assessment form. She opined that Plaintiff had moderate limitations in his ability to understand, remember and carry out detailed instructions and in his ability to interact appropriately with the public. Plaintiff retained the ability to understand, remember and carry out simple job instructions, with limited public contact. AR 247-249.

From February 2004 through March 2005, Plaintiff received psychiatric treatment and medication through the Parole Outpatient Clinic. AR 379-387.

Plaintiff received medication and treatment for seizures through the California Department of Corrections from July 2005 through July 2007. AR 266-378. In March 2006, he received a cane for an unsteady gait. AR 301.

On April 26, 2006, Plaintiff underwent a neurologic consultation for uncontrolled epilepsy. Plaintiff had three grand mal seizures back to back on April 18, as well as a number of episodes in the infirmary requiring intravenous Ativan. On examination, Plaintiff stuttered constantly. He was mentally alert, appropriate and pleasant. Reflexes were +1, with toes downgoing. Sensation was intact to light touch, pinprick and vibration. His coordination was unremarkable, though he walked with a cane. Gregorio S. Pineda, M.D., diagnosed epilepsy, posttraumatic, primary generalized versus partial complex with secondary generalization. He ordered a repeat sleep EEG. AR 355-356.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of a depressive disorder, not otherwise specified, a personality disorder with antisocial features, and a history of a seizure disorder, under fair control. AR 19. He found that Plaintiff retained the residual functional capacity ("RFC") to lift 50 pounds occasionally, 25 pounds frequently. He would be limited to occasional bending, stooping and crouching. Plaintiff could not work at unprotected heights or around dangerous machinery, and could not drive for employment purposes. Plaintiff was also

limited to simple, routine tasks with limited public contact.  AR 21.  Plaintiff had no past relevant work, but the ALJ found that with this RFC, Plaintiff could perform a significant number of jobs in the national economy.  AR 23-25.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  See *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (a depressive disorder, not otherwise specified, a personality disorder with antisocial features, and a history of a seizure disorder, under fair control) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) had no past relevant work; (5) but retained the RFC to perform a significant number of jobs. AR 19-25.

Plaintiff argues that the ALJ erred at step five in finding that Plaintiff could perform a significant number of jobs in the national economy.

**DISCUSSION**

Plaintiff contends that the ALJ erred at step five when he adopted the finding of the Disability Determination Service analyst in determining that a significant number of jobs existed. Plaintiff also argues that the ALJ incorrectly applied SSR 85-15 and should have used a vocational expert ("VE").

If a claimant cannot perform his past relevant work, the burden of proof shifts to the agency at step five to demonstrate that "the claimant can perform a significant number of other jobs in the national economy." *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007) (internal citations omitted). "Work which exists in the national economy" denotes work which exists in significant numbers either in the region where the person lives or in several regions of the country, and one is disabled if significant work exists regardless of whether such work exists in the immediate area in which the person lives, whether a specific job vacancy exists for the

1  person, or whether the person would be hired if he applied for work.  42 U.S.C. §§ 423(d)(2),

2  1382c(3); 20 C.F.R. §§ 404.1566(b), 416.966(b).  The regulations provide:

> Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy.  We will not deny you disability benefits on the basis of the existence of these kinds of jobs. If work that you can do does not exist in the national economy, we will determine that you are disabled.  However, if work that you can do does exist in the national economy, we will determine that you are not disabled.

20 C.F.R. §§ 404.1566(b), 416.966(b).

Whether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by a judicial officer.  *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986).

 To assist in the step-five determination, the Social Security Administration established the Medical-Vocational Guidelines (the Grids), which "consist of a matrix of [the four factors] and set forth rules that identify whether jobs requiring a specific combination of these factors exist in significant numbers in the national economy."  *Hoopai*, 499 F.3d at 1075 (citing *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983)).  When the grids match the claimant's qualifications, "the guidelines direct a conclusion as to whether work exists that the claimant could perform."  *Id.*  When the grids do not match the claimant's qualifications, the ALJ can either (1) use the grids as a framework and make a determination of what work exists that the claimant can perform, or (2) rely on a vocational expert when the claimant has significant non-exertional limitations.  *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 577 (9th Cir.1988).  The determination of whether a non-exertional limitation significantly limits the range of work the claimant is able to perform is left to the ALJ.  *Id.*

At step five, the ALJ determined that Plaintiff's non-exertional impairments "had little or no effect on the occupational base of unskilled light and medium work." AR 24.  Plaintiff's non-exertional impairments included a limitation to occasional bending, stooping and crouching, a prohibition against working at unprotected heights, around dangerous machinery, or driving, and a limitation to simple, routine tasks with limited public contact.  Indeed, given that Plaintiff

could perform both medium and light unskilled work, the ALJ reasonably concluded that Plaintiff's non-exertional limitations did not significantly erode the occupational base. Moreover, the Grids recognize that the ability to perform light work also includes the functional capacity to perform sedentary work. 20 C.F.R. pt. 404 subpt. P, app. 2, § 202.00(a). The ALJ explained:

> Section 202.00 of Appendix 2, provides that approximately 1600 separate sedentary and light unskilled occupations can be identified in eight broad occupational categories, each occupation representing numerous jobs in the national economy which can be performed after a short demonstration or within 30 days, and do not require special skills or experience. The functional capacity to perform a wide or full range of light work represents a substantial work capability compatible with making a work adjustment to substantial numbers of unskilled jobs, and thus generally provides sufficient occupational mobility even for severely impaired individuals who are not of advanced age and have the capability for engaging in unskilled work activity.
>
> Section 203.00 of Appendix 2, provides that approximately 2500 separate sedentary, light and medium occupations can be identified, with each occupation representing numerous jobs in the national economy which do not require skills or previous experience and which can be performed after a short demonstration or within 30 days.

AR 24.

The ALJ therefore determined, pursuant to *Desrosiers*, that Plaintiff's non-exertional limitations did not significantly erode the occupational base and did not preclude reliance on the Grids as a framework for determining disability. Based on the nature of Plaintiff's non-exertional limitations and the fact that he could perform work at the medium, light and sedentary level, the ALJ's determination was supported by substantial evidence.

Plaintiff suggests that the ALJ erred in concluding that his non-exertional limitations did not significantly limit the range of work available because he improperly relied on SSR 85-15. As Plaintiff explains, SSR 85-15 applies to "persons who have only nonexertional limitation(s) of function or environmental restriction(s)."

However, the ALJ did not rely specifically on SSR 85-15 to find Plaintiff not disabled. Rather, he read Rules 202.00 and 203.00 "in conjunction with" SSR 85-15 to conclude that the occupational base was not significantly eroded by Plaintiff's environmental limitations and his limitation to simple, unskilled work with limited public contact. AR 24. While Plaintiff had an exertional limitation to lifting 50 pounds occasionally and 25 pounds frequently, his limitations

were mainly non-exertional in nature.  The ALJ consulted the examples set forth in SSR 85-15 of the impacts of non-exertional impairments as part of his analysis in deciding the main issue of whether to apply the Grids.

The ALJ therefore correctly relied on the Grids as a framework to direct a finding of non-disability.  Having relied on the Grids, then, the ALJ was not required to give specific examples of potential positions and the number of such positions in the national economy.  This renders Plaintiff's argument that the ALJ improperly cited the analyst's findings moot.  Contrary to Plaintiff's suggestion, the ALJ did not rely solely on the positions identified by the analyst, but instead used the occupational information to support the conclusion directed by the Grids.  He explained, "[i]n addition, this conclusion is based on the vocational evidence of record which shows that with these same limitations, jobs exist in significant numbers that the claimant can perform."  AR 24.  The positions included blending-tank helper, basket filler and route aide.  AR 24, 261-262.  The ALJ was entitled to rely on this information.  When determining that unskilled sedentary, light or medium jobs exist in significant numbers in the national economy, the ALJ may take administrative notice of job data from many sources, including occupational analyses prepared for the Social Security Administration by various State employment agencies.  20 C.F.R. § 416.966(d).

The Court therefore finds that the ALJ's step five determination was supported by substantial evidence and free of legal error.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Deshone Lee Smith.

IT IS SO ORDERED.

**Dated:   April 16, 2010**            **/s/ Dennis L. Beck**
                                                 UNITED STATES MAGISTRATE JUDGE